Robert M. Weinberg   (*pro hac vice* application pending)
Leon Dayan          (*pro hac vice* application pending)
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW, Tenth Floor
Washington, D.C. 20008
Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
Email:        ldayan@bredhoff.com
              rweinberg@bredhoff.com

Glenn Rothner (CSB No. 67353)
ROTHNER, SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, CA 91101
Telephone:    (626) 796-7555
Facsimile:    (626) 577-0124
Email:        grothner@rsglabor.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROSIE BYERS, ELLA RAIFORD, MARTHA VAZQUEZ, MEL GARCIA, J. MICHAEL TORRES, STANLEY LYLES, ROBYNE L. HORN and SONIA ASKEW,<br><br>      Plaintiffs,<br><br>      v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, ANDREW L. STERN, MARY KAY HENRY, THOMAS V. DEBRUIN and ANNA BURGER,<br><br>      Defendants. | CASE NO. CV 08 1870 SC<br><br>NOTICE OF MOTION AND MOTION TO DISMISS<br><br>Date:   September 5, 2008<br>Time:  10:00 am<br>Place:  Courtroom 1, 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

SCOPE OF THE RULE 12(B)(6) RECORD ...................................................................................1

STATEMENT OF THE FACTS ........................................................................................................2

SUMMARY OF ARGUMENT .........................................................................................................5

ARGUMENT ......................................................................................................................................6

    I.     Count I Fails to State a Claim on Which Relief May Be Granted Under Either the "Freedom of Speech" or the "Equal Rights" Provisions of Title I of the LMRDA .............................................................................................................6

          A.    Plaintiffs Have Not Alleged Any "Infringement" of their Free Speech Rights Within the Meaning of the LMRDA ...........................................6

          B.    The Complaint Fails to Identify the Denial to Plaintiffs of *Any* "Right" to Vote at or Participate in Union Meetings; It Therefore Necessarily Fails to State a Claim that Plaintiffs Have been Denied their "Equal Rights" to Vote at or to Participate in Such Meetings ...............................16

    II.    Count Two Is Subject To Dismissal For Failure To State A Claim And For Failure To Exhaust Internal Union Remedies .........................................................18

          A.    Each of Plaintiffs' Claims of Breach of the SEIU Constitution is Predicated on a Gross Misreading of the Document's Plain Text ............18

          B.    The Plaintiffs' Failure to Exhaust Their Internal Union Remedies Constitutes an Independent Ground for Dismissing Count II ...................21

    III.    The Abuse Of Process Claim Pleaded In Count Iii Is Frivolous ..........................22

CONCLUSION .................................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Ackley v. Western Conference of Teamsters*, 958 F.2d 1463 (9th Cir. 1992).........................17, 21

*American Family Association, Inc. v. City and County of San Francisco*, 277 F.3d 1114
   (9th Cir. 2002)..................................................................................................................10, 12

*Bailey v. Dixon*, 451 F.2d 160 (5th Cir. 1971).................................................................................15

*Boilermakers, supra*, 348 F.2d at 311-12 ........................................................................................8

*Branch v. Tunnel*, 14 F.3d 449 (9th Cir. 1994)................................................................................1

*Clayton v. International Union, UAW*, 451 U.S. 179 (1981).........................................................21

*Commer v. Keller*, 64 F. Supp. 2d 266 (S.D.N.Y. 1999)......................................................7, 8, 12

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173 (S.D.N.Y. 2006) .........................1

*Farrell v. International Bhd. of Teamsters*, 888 F.2d 459 (6th Cir. 1989)...................................15

*Fernandez-Montez v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993)............................17

*Gini v. Las Vegas Metro. Pol. Dept.*, 40 F.3d 1041 (9th Cir. 1994)................................................8

*Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) ...........................................10

*Harrington v. Painters District Council 35*, 99 Lab. Cas. ¶ 10,705, 1983 WL 2096 (D.
   Mass)........................................................................................................................7, 11, 12

*Horn v. Amalgamated Ass'n*, 194 F. Supp. 560 (E.D. Mich. 1961)...............................................17

*Hotel Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1464 (9th Cir. 1992) ..............................13

*SEIU Local 87 v. SEIU*, 230 F. Supp. 2d 1099 (N.D. Cal. 2002)..................................................15

*International Bhd. of Boilermakers v. Rafferty*, 348 F.3d 311-12 (9th Cir. 1965) .........................7

*Johnson v. Holway*, 2005 WL 3307296 (D.D.C. 2005)..................................................................15

*Johnson v. Kay*, 860 F.2d 529 (2d Cir. 1988).................................................................................7

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)............................................................................1

*Letter Carriers v. Sombrotto*, 449 F.2d 915 (2d Cir. 1971)........................................................15

*" Local 575 v. United Association*, 995 F. Supp. 1151 (D. Colo. 1998).........................................17

*Lynn v. Sheet Metal Workers*, 804 F.2d 1472 (9th Cir. 1986), *cert. granted on other issues and aff'd sub nom. Sheet Metal Workers v. Lynn*, 488 U.S. 347 (1989) ......................21

*Morris v. Hoffa*, 168 L.R.R.M. (BNA) 2581, 2001 WL 1231741 (E.D. Pa. 2001), *aff'd* 361 F.3d 177 (3d Cir. 2004)........................................................................................15

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 232 Cal. Rptr. 576 (Cal. 1986) ......................................................................................................22

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ..................................................................1

*Penthouse Int'l v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991)........................................................10

*Petramale v. Local No. 17 of Laborers Int'l Union of North Am.*, 736 F.2d 13 (2d Cir. 1984) ..............................................................................................................8

*Phelan v. Laramie Cnty. Comm. Coll. Bd.*, 235 F.3d 1243 (10th Cir. 2000) ................................8

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) ..................................................................................9

*Ramona Unified Sch. Dist. v. Tsiknas*, 37 Cal. Rptr. 3d 381 (Cal. App. 2005)............................23

*Ritza v. Longshoremen*, 837 F.2d 365 (9th Cir. 1988)........................................................21, 22

*Rumore v. Belk*, 907 F. Supp. 487 (D.D.C. 1995), *aff'd mem.*, 107 F.3d 923 (D.C. Cir. 1996) ....................................................................................................7, 12, 15

*Salzhandler v. Caputo*, 316 F.2d 445 (2d Cir. 1963)................................................................8

*Service Employees International Union v. Rosselli et al.*, No. 08-02777 (C.D. Cal.).................1, 2

*Stage Employees Local 796 v. Powell*, 124 L.R.R.M. (BNA) 2053, 1986 WL 15481 (N.D. Cal. 1986)..................................................................................................14, 22

*Teamsters Joint Council 42 v. International Bhd. of Teamsters*, 82 F.3d 303 (9th Cir. 1996) ......................................................................................................................14

*United Bhd. of Carpenters Local 42-L v. United Bhd. of Carpenters*, 73 F.3d 958 (9th Cir. 1996).................................................................................................14, 20

**STATUTES**

iv

29 U.S.C. § 185............................................................................................................4, 5

29 U.S.C. § 411 *et seq.*.........................................................................2, 3, 6, 14, 16

29 U.S.C. § 412..............................................................................................................6

29 U.S.C. § 431(b)........................................................................................................19

29 U.S.C. § 462............................................................................................................15

68 Fed. Reg. 58380 (Oct. 3, 2003)............................................................................19

S. Rep.187, 86th Cong., 1st Session, p.9, 1959, U.S.C.C.A.N. 2318, 2325 (1959) ......................19

1 | **NOTICE OF MOTION AND MOTION TO DISMISS**

2 |     PLEASE TAKE NOTICE that at 10:00 a.m. on September 5, 2008, or as soon thereafter

3 | as counsel may be heard in Courtroom 1, 17th Floor of the United States District Court for the

4 | Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California

5 | 94102, Defendants Service Employees International Union ("SEIU"), Andrew L. Stern, Anna

6 | Burger, Mary Kay Henry, and Thomas DeBruin will and hereby do move this Court, pursuant to

7 | Federal Rule of Civil Procedure 12(b), to dismiss the Amended Complaint in this action in its

8 | entirety.

9 | **MEMORANDUM OF POINTS AND AUTHORITIES**

10 | **Scope of the Rule 12(b)(6) Record**

11 |     In considering a Rule 12(b)(6) motion to dismiss, a court is to consider, in addition to the

12 | complaint, any documents "whose contents are alleged in a complaint and whose authenticity no

13 | party questions, but which are not physically attached to the [plaintiff's] pleading." *Branch v.*

14 | *Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994). Further, "documents crucial to the plaintiff's claims,

15 | but not explicitly incorporated in his complaint" may also be considered. *Parrino v. FHP, Inc.*,

16 | 146 F.3d 699, 706 (9th Cir. 1998). The rationale of these rules "applies with equal force to

17 | internet pages as it does to printed material," and a court may therefore consider the contents of a

18 | website referred to in a complaint under the same circumstances as other materials. *Knievel v.*

19 | *ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). *See also Doron Precision Sys., Inc. v. FAAC, Inc.*,

20 | 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (noting that on "a 12(b)(6) motion to dismiss, a

21 | court may take judicial notice of information publicly announced on a party's website, as long as

22 | the website's authenticity is not in dispute and it is capable of accurate and ready determination"

23 | (internal quotation marks omitted)).

24 |     Pursuant to these rules, Defendants have submitted herewith, as Exhibit 1, the SEIU

25 | Constitution and Bylaws, ("SEIU Constitution"), which Plaintiffs rely upon in Count II of the

26 | Amended Complaint ("Complaint"); as Exhibit 2, the federal court complaint in *Service*

27 | *Employees International Union v. Rosselli et al.*, No. 08-02777 (C.D. Cal.), which is central to

28 | Count III; as Exhibit 3, a March 24, 2008 letter, the contents of which Plaintiffs describe in ¶

22(a) of the Complaint and that is central to their Count I claims, *see* Cplt. ¶¶ 22(a), 34(b); and as Exhibit 4, the home pages of the website, www.seiuvoice.org , ("seiuvoice"), which is "endorsed" by Plaintiffs and is also central to their Count I claims.  *See* Cplt. ¶¶ 17, 22(c), 34(a).

## **Statement of the Facts**

The following facts are drawn from the allegations in the Complaint and the exhibits.

**1.**  Plaintiffs in this action are eight members of the Executive Board of SEIU United Healthcare Workers-West ("UHW"), a California-based local union affiliate of defendant Service Employees International Union ("SEIU" or "International Union").  Cplt. ¶¶ 3-10. The Defendants are the International Union and four of its officers:  President Andrew L. Stern, Secretary-Treasurer Anna Burger, Executive Vice President Mary Kay Henry and Vice President Thomas v. DeBruin.  *Id.* ¶¶ 11-15.

There is an ongoing "critical debate concerning the strategic direction of the SEIU" regarding matters such as local versus centralized decision-making, with the UHW being on one side of that debate and certain other locals and the International on the other.  Cplt. ¶ 17.   Each of the Plaintiffs is a UHW officer and "an active participant" in that debate.  *Id.*   On or about February 15, 2008, UHW established (in addition to its official website seiu-uhw.org) a website called "seiuvoice.org" as one means of pressing its side in the debate.  *Id.*  The seiuvoice website, which has been maintained and updated continuously since its establishment, contains full-throated criticisms of the International Union's programs and officers.  *See* Exh. 4.[1]

In Count I, the Complaint includes conclusory assertions that Defendants have infringed Plaintiffs' rights, conferred by Title I of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411 *et seq.*, to (i) "freedom of speech" regarding union matters, 29 U.S.C. § 411(a)(2); and (ii) "equal rights to vote in elections or referendums of the labor organization, attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings," *id.* § 411(a)(1).  The Complaint fails, however, to make any allegation that, in retaliation for Plaintiffs' speech, the Defendants have expelled, suspended,

---

[1]All references to Exhibits are to the exhibits attached to the Dayan Declaration submitted herewith.

1   fined, charged with misconduct, or indeed taken or threatened *any* tangible adverse action

2   against any Plaintiffs.  Nor, in connection with the alleged "equal rights" denial, does the

3   Complaint identify an instance in which a Plaintiff was deprived of either a right to "vote," a

4   right to "attend membership meetings" or a right to "participate in the deliberations" of a

5   meeting.

6          What the Complaint does allege is that, in response to Plaintiffs' vigorous free speech on

7   one side of the intra-union debate, the International Union and its officers have engaged in

8   vigorous *counter-speech* against Plaintiffs and other UHW officers.  Thus, Plaintiffs allege that

9   the Defendants infringed their free speech rights by "attacking the leadership of the UHW

10  including the plaintiffs herein" through "robocalls, mailings, calls and personal staff visits

11  directed at UHW members and directed to the broader SEIU membership." Cplt. ¶ 34(c).

12         The other actions about which the Plaintiffs complain as part of their "free speech" claim

13  were not actions directed to the Plaintiffs as members, but rather were directed to their local

14  union as an entity.  Thus, Plaintiffs allege that the International's response to UHW's decision to

15  sponsor the seiuvoice website was to sponsor a "rival website, www.seiufactchecker.org,

16  directed at the very same issues of concern" as seiuvoice.  Cplt. ¶¶  34(a), 22(c).  And Plaintiffs

17  complain as well that two of the Defendants, Henry and DeBruin, allegedly "implied" to UHW

18  that,  as a condition to SEIU's participation in certain voluntary conciliation discussions with

19  UHW to settle intra-union disputes not otherwise relevant here, UHW should take the seiuvoice

20  site offline.  *Id.*   The Complaint does not allege UHW took down its site, but in fact makes clear

21  that UHW has maintained the seiuvoice site with no repercussions to Plaintiffs or anyone else.

22  *See infra* p. 4 and note 2.

23         Plaintiffs also cite as relevant to their free speech claim a letter that the International

24  Union President sent to UHW's President on March 24, 2008 asking UHW to respond to certain

25  allegations the International had received from members concerning financial and other

26  misconduct by UHW's leaders.  Cplt. ¶¶ 34(b), 22(a).  One allegation in that letter was that top

27  UHW officers caused millions of dollars in UHW funds to be transferred to an entity under their

28  control that was, in form, a separate non-profit organization, but that was in fact being run as an

off-the-books "shadow" union to avoid accountability to UHW members, the SEIU, and the

Department of Labor.  *See* Exh. 3.  The Complaint alleges that Plaintiffs subjectively believed

that this letter amounted to a threat by SEIU to impose a "trusteeship" over UHW, that is, to

temporarily suspend the local's autonomy.  Cplt. ¶ 24.  But the March 24 letter does not contain

any language expressing either an express or implied "threat" to impose a trusteeship over UHW.

Rather, the letter simply notifies UHW President Rosselli of certain assertions that others had

made about the local; labels those assertions "allegations" rather than "findings" or proven

"facts"; and provides Rosselli with the opportunity to respond to the allegations.  *See* Exh. 3 at 1

("I am writing to notify you of these allegations and to give you the opportunity to provide

documents by March 28, 2008 that address certain of these issues and to respond to me in writing

no later than April 4, 2008 on other matters").  The Complaint does not allege that the Plaintiffs

either ceased speaking out after the letter was sent or censored themselves in any way.[2]

　　　　**2.**  While the foregoing allegations form the crux of the Complaint, the Complaint also

alleges certain facts relating to Plaintiffs' Count II claims against the International for breach of

its Constitution and Bylaws ("Constitution"), brought pursuant to § 301 of the Labor of the

Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

　　　　In particular, Plaintiffs assert that Article XXIII of the SEIU Constitution requires the

International Union to exhaust internal union remedies as a condition of bringing suit, and that

the International violated that Article on April 29, 2008 when the SEIU, without first exhausting

union remedies, instituted a suit in federal court, captioned *Service Employees International

Union v. Rosselli et al.*, against ten UHW officers, including three of the Plaintiffs in this case.

Cplt. ¶¶ 29, 43(b).  That suit, an outgrowth of the March 24 letter described above, alleged that

the defendants there had improperly caused the transfer of $3 million in UHW funds to a sham

nonprofit "education" fund controlled by the ten officers and operated as an off-the-books arm of

---

[2] Exhibit 4, consisting of weekly printouts of the home pages of the seiuvoice website for the period both before and after the letter, shows that full-throated criticism of the SEIU and its leaders continued unabated after March 24.  In fact, on the April__home page, UHW President Rosselli says, "we will not be silenced."  *See* Exh. 4.

UHW in violation of the SEIU and UHW constitutions and the defendants' fiduciary duties. Exh. 2.   The suit sought the return to UHW of the transferred monies.  *Id.*

By its terms, Article XXIII imposes an exhaustion requirement only on members, local unions, and "affiliated bodies,"[3]—and not on the International itself:

> Subject to applicable law, no member, Local Union, or affiliated body shall bring any action against the International or any other Local Union or affiliated body or any officers thereof, with respect to any matter arising out of the affairs of the International Union or its Local Unions or affiliated bodies unless he or she has exhausted all procedures available under this Constitution....

Exh. 1at 41.[4]

**3.**  The Complaint alleges, in Count III, that the filing of *SEIU v. Rosselli* constituted an "abuse of process" under California law.  That suit, as noted, sought a return of the monies transferred to the so called "education" fund.  Plaintiffs allege that, prior to the filing of that lawsuit, the defendants in that case had provided "virtually" all the relief the SEIU had sought. Cplt. ¶ 29.

## **Summary of Argument**

Plaintiffs' Complaint should be dismissed in its entirety.

With respect to Count I, which invokes Title I of the LMRDA, neither the allegations made in connection with the Title I "free speech" claim nor those made in connection with the Title I "equal rights" claim are sufficient to sustain the respective causes of action.  As to the free speech claim, Defendants have not disciplined Plaintiffs or threatened them with discipline or

---

[3] The Constitution states that "[t]he term 'affiliated bodies' shall include State and Provincial Councils, Joint Councils, Service Councils, area, regional, or industry Conferences and Divisions, organizing committees and provisional locals, and such other bodies … as the International Union shall from time to time establish."  Art. III § 2(b).  Exh. 1 at 4-5.

[4] Other facts pertinent to the LMRA § 301 claims are set forth in the relevant section of the Argument.

- 6 -

1  any other tangible harm in retaliation for their speech, but have only engaged in vigorous

2  counter-speech.  Thus the Complaint fails to allege an act by Defendants amounting to an

3  "infringement" of Plaintiffs' free speech rights, as required by LMRDA § 102, 29 U.S.C. § 412.

4  As to the claim under the LMRDA's "equal rights" clause, the Complaint fails to allege that any

5  Plaintiff has suffered any deprivation of one of the enumerated rights or privileges protected by

6  that clause.

7        Count II, brought pursuant to LMRA § 301 and alleging violations of the SEIU

8  Constitution, is also due to be dismissed.  Each of Plaintiffs' claims of violation rest on a gross

9  misreading of the document's plain text.

10        Count III asserts that the bare filing of the federal lawsuit referenced *supra* at 4

11  constituted an "abuse of process" under California law.  This claim is frivolous.  The California

12  Supreme Court has squarely held that the bare filing of a lawsuit cannot, as a matter of law,

13  constitute an abuse of process – regardless of the filer's purpose or motive.

14                        **ARGUMENT**

15  **I.    COUNT I FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE**

16        **GRANTED UNDER EITHER THE "FREEDOM OF SPEECH" OR THE "EQUAL**

17        **RIGHTS" PROVISIONS OF TITLE I OF THE LMRDA**

18
19        **A.    Plaintiffs Have Not Alleged Any "Infringement" of their Free Speech Rights**
           **Within the Meaning of the LMRDA**
20

21        Section 101(a)(2) of the LMRDA—Title I's "[f]reedom of speech" clause—provides that

22  "[e]very member of any labor organization shall have the right to meet and assemble freely with

23  other members; and to express any views, arguments, or opinions; and to express at meetings of

24  the labor organization his views, upon candidates in an election of the labor organization or upon

25  any business properly before the meeting."  29 U.S.C. § 411(a)(2).  Section 102 of the LMRDA,

26  in turn, authorizes a private right of action to enforce that provision in favor of "[a]ny person

27  whose rights secured by th[at] provision[] … have been *infringed* by any violation of this

28  subchapter."  29 U.S.C. § 412 (emphasis added).

1  Plaintiffs' free speech claim here should be dismissed because Plaintiffs do not allege any

2  tangible action on the part of Defendants that amounts to an "infringe[ment]" of their rights

3  within the meaning of § 102.

4        **1.**  In the paradigmatic LMRDA free speech case, the plaintiff union member

5  alleges that, in retaliation for exercising free speech rights, the member suffered some tangible

6  reprisal that constitutes an unmistakable "infringement," such as being assaulted, removed from

7  a union meeting, expelled from the union, fined, suspended from membership, or denied some

8  other privilege of union membership. *See, e.g.*, *International Bhd. of Boilermakers v. Rafferty,*

9  348 F.3d 311-12 (9th Cir. 1965) (plaintiffs were expelled from union for speaking out); *Johnson*

10  *v. Kay*, 860 F.2d 529, 536-37 (2d Cir. 1988) (plaintiff was threatened with bodily harm for

11  speaking out).

12        And, while union members who have not suffered a reprisal can make out a proper free-

13  speech "infringement" claim by showing that they have been deterred, or "chilled," from

14  speaking out, in order to proceed on that theory, they must show that the cause of that "chill" is

15  either a union rule imposing sanctions for the speech in question or some other  "tangible and

16  identifiable threat" attributable to the defendant that would reasonably cause the plaintiff to fear

17  adverse action for speaking out.  *Rumore v. Belk*, 907 F.Supp. 487, 492 (D.D.C. 1995), *aff'd*

18  *mem.*, 107 F.3d 923 (D.C. Cir. 1996) (collecting cases).

19        Furthermore, where the plaintiff is a union *officer*, and where the act alleged to create an

20  impermissible "chilling effect" on the plaintiff's speech is simply counter-speech—including

21  even counter-speech that is harshly critical or even defamatory of that officer—no claim of

22  LMRDA § 102 "infringement" can be predicated on that counter-speech as a matter of law.

23  Three district court cases so hold, s*ee Commer v. Keller*, 64 F. Supp. 2d 266, 271-72 (S.D.N.Y.

24  1999); *Rumore v. Belk, supra*, 907 F. Supp. at 492; and *Harrington v. Painters District Council*

25  *35*, 99 Lab. Cas. ¶ 10,705, 1983 WL 2096, at * 4 (D. Mass); there are no court of appeals cases

26  to the contrary, and, as will become apparent momentarily, the district court cases are well-

27  reasoned and comport with analogous First Amendment cases decided by the Ninth Circuit.

28

1    In *Commer v. Keller*, 64 F. Supp. 2d 266 (S.D.N.Y. 1999), the court granted a Rule

2 12(b)(6) motion to dismiss an LMRDA free-speech counterclaim brought against the president of

3 a local union by lower-ranking officers who alleged that the president retaliated against them for

4 their speech by making "defamatory attacks" against them, *id.* at 271, including false allegations

5 that they were "crooks" engaging in "illegal and harmful acts," *id.* at 272 n.1.  The officers who

6 brought the counterclaim alleged that those "defamatory attacks" were acts of retaliation and

7 constituted implied threats to file charges against them.  In dismissing the counterclaim, the court

8 reasoned (i) that "[c]riticism of another union official is not an 'oppressive act' or retaliation

9 serious or threatening enough to support a conclusion that the speaker is unlawfully suppressing

10 dissent in a manner that threatens union democracy," *id.* at 272; (ii) that this is so regardless of

11 whether union funds are being used to support counter-speech, *id.* at 273; and (iii) that "[f]ar

12 from violating § 101(a)(2), speech that criticizes union officers, such as [the president's] attack

13 on [the lower-ranking officers], is precisely the type of speech that is meant to be *protected* by §

14 101(a)(2)," *id.* at 272 (emphasis in original).

15    In developing that last point—that speech critical of union officers is affirmatively

16 *protected* by § 101(a)(2)—the *Commer* court cited *Petramale v. Local No. 17 of Laborers Int'l*

17 *Union of North Am.*, 736 F. 2d 13, 16 (2d Cir. 1984).  *Petramale* held that "[c]riticism of union

18 officers, even when it amounts to slander, is protected speech under the LMRDA," *id.*—a

19 holding that accords with the Ninth Circuit's earlier decision in *Boilermakers*, *supra*, 348 F.2d at

20 311-12.  *Petramale* and *Boilermakers* reflect the view that, in enacting the LMRDA, Congress

21 understood that "disputes between rival factions within the union … can be fraught with tensions

22 and even sparked with 'vitriol and calumny.'" *Petramale*, 736 F.2d at 17 (quoting *Salzhandler v.*

23 *Caputo,* 316 F.2d 445, 450 n.7 (2d Cir. 1963).[5]

24

25 [5] In holding that the LMRDA "protects" slanderous speech against officers, the courts mean only
that, within the scheme of union rules, disciplinary proceedings, and LMRDA rights and

26 remedies, such speech is protected; an officer who believes another officer has defamed him can

27 bring a state-law defamation claim against that officer, but may not use union proceedings or the
LMRDA to pursue the alleged defamer.  *See Salzhander supra*.  In this regard, LMRDA law has

28 a parallel in First Amendment jurisprudence, where it is well established that a citizen who, in
retaliation for her speech, is met with a defamatory or slanderous accusation by a government

1    The *Commer* court properly recognized that, against that legal backdrop, it becomes

2   untenable to treat Officer A's initial act of criticizing Officer B as *protected* by the LMRDA,

3   while treating Officer B's "retaliatory" counter-criticism against Officer A as *prohibited* by the

4   LMRDA on the theory that it constitutes an "infringe[ment]" of A's rights.  To read the LMRDA

5   in that manner would be to impute to Congress an intent to create a legal regime that, in the First

6   Amendment context, the Supreme Court has condemned as impermissible:  "[The Government]

7   has no such authority to license one side of a debate to fight freestyle, while requiring the other

8   to follow Marquis of Queensberry rules."  *R.A.V. v. St. Paul*, 505 U.S. 377, 392 (1992).

9    The decision of the District Court for the District of Columbia in *Rumore v. Belk, supra*,

10  is also highly instructive on the question of what constitutes an LMRDA § 102 "infringement."

11  In *Rumore*, the plaintiff was a local union officer who challenged as retaliatory an e-mail

12  communication to him from an executive of the international union that was copied to all of the

13  local union leaders within the plaintiff's district.  In the email, the international officer sharply

14  admonished the plaintiff for sending a letter to sister locals advertising a seminar the plaintiff

15  planned to conduct in order to educate local union leaders on how to resist trusteeships by parent

16  unions.  The email characterized the seminar as "an apparent attempt to interfere with the clean-

17  up of corruption" in the international union and as a "waste of money" that would "send the

18  wrong signal to our members … that you plan to train officials on how to walk the fine line

19  between permissible activity and corruption."  *Id.* at 490.  The plaintiff went ahead with his plan

20  to conduct the seminar and was not disciplined.  *Id.*

21   The *Rumore* court, after recognizing that the plaintiff was engaged in protected activity in

22  sponsoring and promoting the seminar, held that the plaintiff could not show that the defendant's

23  email constituted an actionable infringement of his LMRDA free speech rights.  The court

24  reasoned that, because the plaintiff local officer had not been disciplined, he had to show that a

25  "tangible and identifiable threat" was made against him that would reasonably deter speech; and

26

27

28  official, has no First Amendment claim against that official but is relegated to state-law
defamation remedies.  *See, e.g., Gini v. Las Vegas Metro. Pol. Dept.*, 40 F.3d 1041, 1045 (9th
Cir. 1994); *Phelan v. Laramie Cnty. Comm. Coll. Bd.*, 235 F.3d 1243, 1248 (10th Cir. 2000).

the court then held that, as a matter of law, the defendant international officer's admonitory

email was *not* such a threat, as it did not suggest that the official's apparent desire to see the

seminar cancelled was backed up by any intimation that the disciplinary power of the

international would be invoked if the seminar went forward as planned. *Id.* at 492-93.

In so holding, the *Rumore* court acted in accordance with a settled principle of First

Amendment law invoked by the Ninth Circuit in *American Family Association, Inc. v. City and

County of San Francisco,* 277 F.3d 1114 (9th Cir. 2002), which is that when government

officials, in response to speech, take actions or issue communications that are "neither

regulatory, proscriptive, or compulsory" but merely precatory—that is, when the government

expresses disapproval of speech under circumstances where it is apparent that the plaintiff will

suffer no punishment or denial of a privilege for the continued exercise of her rights—"alleging

a subjective chilling effect … is not sufficient to constitute a substantial burden." *Id.* at 1124.

In *American Family,* the Ninth Circuit rejected a free-speech claim brought against public

officials who had not only sharply criticized the plaintiffs' speech, but urged television stations

not to air it. In so doing, the court stated: "We agree with the host of other circuits that recognize

that public officials may criticize practices they would have no constitutional ability to regulate,

so long as there is no actual or threatened imposition of government power or sanction." *Id.* at

1125.[6]

The last of the three District Court decisions cited above, *Harrington v. Painters*, is to the

same effect. There, the plaintiff financial secretary of a local district council was an "open,

continuous, and vociferous opponent" of the higher-ranking council leadership, including the

_____

[6] *See also Penthouse Int'l v. Meese*, 939 F.2d 1011, 1015-16 (D.C. Cir. 1991) (federal officials
sent letters to retailers on Justice Department letterhead stating that the government considered
the plaintiff publisher's materials to be pornography and requesting that the retailers not
distribute them; letters not actionable, as they did not threaten or intimate an intent to prosecute
or proscribe publisher's conduct); *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 38-39
(2d Cir. 1983) (no First Amendment violation where public officials sent letters to retail stores
requesting that they refrain from selling a controversial board game, as letters could not
reasonably be interpreted as "intimating that some form of punishment or adverse regulatory
action will follow" failure to comply).

secretary-treasurer.  At various union meetings, the secretary-treasurer called the plaintiff "a 'scumbag,' 'maggot,' 'low life' and 'sewer rat,'" and, at one meeting, he was "labeled a 'troublemaker' and told to 'shut up and sit down'" by members in attendance.  1983 WL, at *2 & n.4.  These facts were insufficient to "indicate infringement of free speech," because the plaintiff made no allegation that union leadership "stopped or prevented him from presenting his views either at the local meetings or at the job sites," and the harsh remarks aimed at the plaintiff were not themselves actionable, as they "merely show[ed] the reaction to be expected in any hotly contested debate" within a union.  *Id.*, at *2.

The lesson of these cases is straightforward:  Union officers who have spoken out against other union officers and who have not suffered any reprisals for their speech can prevail in an LMRDA § 101(a)(2) free-speech action only if they can show that a "tangible and identifiable threat" was made against them that chilled their speech.

**2.**  Applying the case law to the facts here, it is clear that the Complaint fails to state a claim for infringement of LMRDA free-speech rights.

In paragraph 19 of the Complaint, Plaintiffs allege that "[w]ithin the SEIU, there is currently an active and critical debate concerning the strategic direction of the SEIU," and that each Plaintiff has been engaged in speech protected under LMRDA § 101(a)(2) by being "an active participant" in that debate.  In paragraph 34 of the Complaint, Plaintiffs identify three specific actions allegedly engaged in by Defendants in retaliation for their protected speech that Plaintiffs contend amount to "infringe[ments]" of their LMRDA § 101(a)(2) rights.  Only one of those actions is alleged to have been directed at the plaintiffs themselves; the other two actions are alleged to have been directed at UHW as an institution.   In all events, neither the action allegedly taken against the Plaintiffs, nor the other two actions suffices to establish a proper predicate for a § 101(a)(2) infringement claim.

**a.**  The action in paragraph 34 alleged to have been taken against the Plaintiffs themselves is a "concerted campaign" by Defendants to "attack[] the leadership of the UHW including the plaintiffs herein" by using such media of communication as "robocalls, mailings, emails, calls and personal staff visits [by SEIU International employees] directed at UHW

- 12 -

1   members and directed to the broader SEIU membership." Cplt. ¶ 34(c).  Elsewhere in the

2   Complaint, Plaintiffs elaborate by asserting that the Defendants have "actively encouraged and

3   countenanced" "slanders directed against the UHW and its leaders" in order to "support [the

4   International Union's] position concerning the matters of union debate described above." *Id.* ¶

5   27(f).

6          This allegation is nothing more than a contention that the Defendants, as participants in

7   the "critical debate" to which the Complaint refers, have responded to Plaintiffs' protected

8   speech with counter-speech critical of Plaintiffs and other UHW officers.  And, as *Commer* and

9   the other cases discussed above make clear, "[f]ar from violating § 101(a)(2)," such counter-

10  speech against local union officers "is precisely the type of speech that is meant to be *protected*

11  by § 101(a)(2)." *Commer*, 64 F. Supp. 2d at 272.  *See also id.* at 273 ("[t]he fact that union funds

12  are being used to support alternative speech does not infringe on defendants' free speech

13  rights").

14         **b.** Paragraph 34 of the Complaint next alleges that for a period running from February

15  2008 to late March 2008, two of the Defendants (Henry and DeBruin) were "repeatedly

16  instructing the UHW"—to no avail (*see supra* note 2)—"to 'take down' its website,

17  www.seiuvoice.org," a site that UHW established to support its position and oppose the

18  International's in the "critical debate" described above.  Cplt. ¶ 34(a); *see also id.* ¶¶ 17, 19,

19  22(c).  The Complaint does *not* allege that any one suffered any repercussions for ignoring the

20  alleged "instruct[ion]."  Nor does it allege that Henry, DeBruin or anyone else so much as

21  suggested when communicating the alleged "instruct[ion]," that any discipline or punishment

22  would befall UHW (or anyone else) were the local to fail to heed it.   The communication

23  therefore is not an actionable "tangible and identifiable threat" under the cases canvassed above*,

24  e.g., Rumore, supra*, but is rather is the type of precatory communication that the Ninth Circuit in

25  *American Family*, *supra,* and the other circuit court cases cited in note 6 *supra* held to be

26  insufficiently punitive or coercive to sustain an infringement claim in the First Amendment

27  context.

28

That conclusion is buttressed by the fact that the only consequences that the Complaint alleges that the Defendants even *implied* would attach to a decision by UHW to leave the seiuvoice website online are two consequences far removed from any conceivable notion of discipline or punishment. First, the Complaint suggests that because the Defendants "promulgated a rival website, www.seiufactchecker.org directed at the very same issues of concern [as seiuvoice]" and did so "[a]t the same time that the demand for the elimination of seiuvoice was made," the International was making it plain it would engage in vigorous counter-speech if the UHW failed to take down its site. We have already shown exhaustively that "retaliating" against a speaker with counter-speech does not infringe, but instead exemplifies, the exercise of LMRDA free speech rights.

Second, the Complaint states that "various items of dispute between the UHW and the International Union" were the subject of anticipated voluntary "discussions" between the two parties, and the Complaint alleges that Defendants Henry and DeBruin, in the course of communicating their alleged "instruct[ion]" to UHW about the seiuvoice website, "implied, directly or indirectly, that the taking down of the website [was] a precondition to any [such] discussions concerning how to resolve [those] various items" going forward. Cplt. ¶ 22(c). It is, of course, common for parties interested in voluntarily resolving items of dispute to agree to suspend public criticism of each other while settlement discussions are ongoing, and the proposition that it violates one party's "freedom of speech" for the other to propose such an agreement as a precondition of entering negotiations is contrary to the law and contrary to reason. *See, e.g., Hotel Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1470 (9th Cir. 1992) (while employer has right under NLRA to speak out against unionization, "[n]othing in the relevant statutes or NLRB decisions suggests employers may not agree to remain silent during a union's organization campaign—something an employer is certainly free to do in the absence of an agreement").

Beyond all this, the Plaintiffs quite simply lack statutory standing to assert any LMRDA § 101(a)(2) "free speech" claim based on an alleged request directed to *UHW* to take down a *UHW*-sponsored website as a condition of SEIU's willingness to enter into conciliation

1    discussions with *UHW*.   The Complaint, it must be stressed, does not allege that the Plaintiffs'

2    *individual rights as union members* would be infringed in the event UHW were to decide to

3    accept the alleged condition proposed by Defendants Henry and DeBruin and enter into

4    conciliation discussions with the International.   Rather, it seeks to vindicate whatever legal right

5    *UHW* might have, as an institution, in being free from that condition.   And the Ninth Circuit has

6    squarely held that § 101(a)(2), in conferring a free speech right on "[e]very *member* of a labor

7    organization," 29 U.S.C. § 411(a)(2)(emphasis added), "guarantee[s] a right of free speech only

8    to individuals, *not to entities such as local unions*."  *United Bhd. of Carpenters Local 42-L v.*

9    *United Bhd. of Carpenters*, 73 F.3d 958, 964 (9th Cir. 1996). (emphasis added)  *See also*

10   *Teamsters Joint Council 42 v. International Bhd. of Teamsters*, 82 F.3d 303, 305 (9th Cir. 1996)

11   (same); *Stage Employees Local 796 v. Powell*, 124 L.R.R.M. (BNA) 2053, 2057, 1986 WL

12   15481 (N.D. Cal. 1986) (same).

13           **c.**  The third and final specific action alleged in Count I of the Complaint to

14   constitute an "infringe[ment]" of Plaintiffs' free speech rights is that the Defendants began an

15   investigation of UHW "[o]n March 24, 2008," when "President Stern wrote the elected president

16   of UHW, Sal Rosselli asserting various anonymous charges against UHW and demanding …

17   responses to those charges." Complaint ¶ 22(a).  *See also id.* ¶ 34.  The March 24 letter states as

18   its first allegation that Rosselli participated in the "[c]reation of a shadow entity and [the]

19   transfer of local union treasury money to circumvent internal union governance obligations."

20   Exh. 3.  The Complaint alleges that this letter "has been taken by the plaintiffs, legitimately, to

21   constitute a threat to unlawfully place their local in a trusteeship and therefore suspend their

22   democratic processes."  *Id.* ¶ 24.

23           This allegation, too, is insufficient to support Plaintiffs' free speech infringement claim.

24   To begin with, the March 24 letter does not contain any language stating either an express or

25   implied "threat" to impose a trusteeship over UHW.  Rather, as set forth *supra* at 4, the letter

26   simply notifies UHW President Rosselli of certain assertions that others had made about the local

27   and affords Rosselli with the opportunity to respond to the allegations.  Under the analysis in

28

- 15 -

*Rumore, supra,* it is clear as a matter of law that the March 24 letter contains no actionable "threat" to retaliate for speech.

Second, the "[p]rinciples governing the establishment and maintenance of trusteeships are set forth in *Title III* of the LMRDA, codified at 29 U.S.C. § 461 *et seq.*," *Farrell v. International Bhd. of Teamsters,* 888 F.2d 459, 461 (6th Cir. 1989) (emphasis added), and the cases are uniform in holding that local union members cannot invoke *Title I* of the LMRDA to litigate issues going to whether there are lawful grounds for a trusteeship.  *See Farrell*, 888 F.2d at 462 (presence of an independent Title I challenge to the validity of a trusteeship would "reduce to surplusage those portions of Title III which provide a specific remedy for improper establishment of trusteeships"); *Johnson v. Holway*, 2005 WL 3307296, at *17 (D.D.C. 2005) (same); *Morris v. Hoffa*, 168 L.R.R.M. (BNA) 2581, 2001 WL 1231741, at *10 (E.D. Pa. 2001) (same), *aff'd* 361 F.3d 177 (3d Cir. 2004).

This case well illustrates why it is improper to "ignore the demarcation between Title I and Title III."  *Johnson*, *supra*, 2005 WL 3307296, at * 17.  Under Title III, trusteeships may properly be imposed "for the purpose of correcting corruption or financial malpractice …or otherwise carrying out the legitimate objects of such labor organization," 29 U.S.C. § 462, and a trusteeship "authorized or ratified after a fair hearing …shall be presumed valid for a period of eighteen months from the date of its establishment.," *id.* § 464.  Further, the courts do not review the parent union's decision to impose a trusteeship *de novo*, but instead ask whether the determination was reasonable in light of the record developed at the hearing.  *Bailey v. Dixon*, 451 F.2d 160, 161 (5th Cir. 1971).  Finally—and of critical importance—in determining whether a local union challenging a trusteeship on the basis of an improper purpose has overcome the statutory 18-month presumption of validity, the courts consider only whether the trusteeship was justified by at least *one* proper purpose; courts do *not* invalidate a trusteeship imposed based on both proper and improper purposes.  *See, e.g., Letter Carriers v. Sombrotto*, 449 F.2d 915, 923 (2d Cir. 1971); *SEIU Local 87 v. SEIU*, 230 F. Supp. 2d 1099, 1105 (N.D. Cal. 2002); *Johnson*, 2005 WL 3307296, at *14.

- 16 -

It follows ineluctably from these principles that a parent union's mere commencement of an investigation into whether grounds exist for a trusteeship cannot sensibly be equated with an actionable "threat" for Title I purposes.  To make that equation would be to put parent unions in a Catch-22 where, if they investigate allegations made against a local union and give the local an opportunity to respond, they have communicated a "threat," but if they summarily impose a trusteeship *without* investigating, based on a hunch or an uncorroborated tip, they have violated Title III by failing to evince the requisite "good faith."   And it follows as well that a local union or its officers cannot be permitted, even in cases where the parent union *has* communicated a threat to imminently impose a trusteeship, to make that threat the basis for a Title I cause of action.  To allow a pre-trusteeship challenge in the guise of a Title I suit would upset (i) Congress' determination that a single permissible purpose is sufficient to sustain a trusteeship even when mixed with impermissible motives; and (ii) Congress' determination that courts are not to judge the propriety of trusteeships *de novo*, but on the record created by the union's hearing.

Thus, the free-speech claim predicated on the March 24 should be dismissed both because that letter contains no "threat" of a trusteeship, and because even if, contrary to reason, it could be construed as such a threat, a Title I suit still would be an impermissible vehicle for asserting that the "threatened" trusteeship would be "unlawful."

**B.    The Complaint Fails to Identify the Denial to Plaintiffs of *Any* "Right" to Vote at or Participate in Union Meetings; It Therefore Necessarily Fails to State a Claim that Plaintiffs Have been Denied their "Equal Rights" to Vote at or to Participate in Such Meetings**

The second component of Count I, which alleges that Defendants violated Plaintiffs' LMRDA § 101(a) "equal right[] to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings," 29 U.S.C. § 411(a)(1), can be dispensed with in short order.  As the text of the "equal rights" provision makes clear—and as the courts have recognized since the earliest days of the LMRDA—the "equal rights" provision is a "guarantee to union members [of] certain

rights *specifically set forth therein*," and is not a "'catch-all provision' for dissatisfied members" aggrieved by alleged unequal treatment in connection with un-enumerated union rights or privileges. *Horn v. Amalgamated Ass'n*, 194 F. Supp. 560, 562 (E.D. Mich. 1961) (emphasis added). *See also Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1478 (9th Cir. 1992) ("Congress did not intend that the section address every conceivable violation of union members' rights"). Applying that understanding, courts have rejected efforts to invoke the "equal rights" clause to encompass equal rights to "receive mailings, appeal decisions to a union convention, or attend business manager training," *Local 575 v. United Association*, 995 F. Supp. 1151, 1159 (D. Colo. 1998), or even to encompass equal access to the *tapes* of union meetings, *see Fernandez-Montez v. Allied Pilots Association*, 987 F.2d 278, 288 (5th Cir. 1993) (listening to tape after meeting has concluded is not a form of "participation" in the meeting).

Here, the Plaintiffs assert a litany of acts of alleged unequal treatment, such as alleged unequal treatment of their requests to the International to have the International investigate other local unions. *See, e.g.,* Cplt. ¶ 33(e). But, with one exception, all of the acts concern alleged unequal treatment in connection with *unenumerated* rights or privileges, rather than with rights or privileges even resembling the specific enumerated protected rights in § 101(a)(1). The exception is that Plaintiffs include allegations—made on May 23, 2008 when the Amended Complaint was filed—to the effect that Plaintiffs feared that a trusteeship imposed by the International would prevent them from participating as delegates in the then "upcoming"—and now concluded—June 2-4 SEIU Convention. *See Cplt.* ¶ 33. Plaintiffs, however, did participate in that Convention, as the seiuvoice website makes plain. *See* Exh. 4. And, as discussed above, the Defendants never threatened a trusteeship. *See supra* at 14. Moreover, the reasons we already have set forth as to why a Title I free-speech lawsuit cannot be used as a vehicle to circumvent Title III's comprehensive regulation of the lawfulness of trusteeships apply with equal force to a Title I equal rights lawsuits of that kind. *See* Part I.A.3.c *supra*.

1

2

**II.    COUNT TWO IS SUBJECT TO DISMISSAL FOR FAILURE TO STATE A**
**CLAIM AND FOR FAILURE TO EXHAUST INTERNAL UNION REMEDIES**

3

4

5

Count II of the Complaint, brought pursuant to § 301 of the LMRA, asserts three claims

for breach of the SEIU Constitution.  This Count is subject to dismissal both on the merits and on

the ground that Plaintiffs have failed to exhaust their internal union remedies.

6

7

8

**A.    Each of Plaintiffs' Claims of Breach of the SEIU Constitution is Predicated**
**on a Gross Misreading of the Document's Plain Text**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.**  Plaintiffs' first breach-of-constitution claim is that Article II of the SEIU

Constitution, its "Objects and Purposes" provision, impliedly forbids the International Union

from expending union resources on the counter-speech discussed above—that is, on the

"mailings, robocalls, emails, and other forms of direct communication from the SEIU

International to members of the UHW and other locals of the SEIU," Cplt. ¶¶ 27, 43(e).

Plaintiffs contend that none of the enumerated objects or purposes in Article II covers such

expenditures.  The plain text of Article II refutes that contention.  Section I of Article II broadly

authorizes the International to "*utiliz[e], in every lawful way*, including but not limited to every

kind of use, expenditure and investment, the property and funds of this International Union, in

order to achieve its purposes and objects and perform its obligations, and for such other purposes

directly or indirectly furthering the interests of this International Union and its members."  Exh.

1 at 4 (emphasis added).  That sweeping authorization to expend union funds to achieve *both* the

enumerated purposes and objects of the International *and* "other purposes directly or indirectly

furthering the interests of the International is limited only by the constraint that expenditures not

violate public-law prohibitions, such as those contained in the LMRDA.  And we already have

shown that the expenditure of union funds on counter-speech entirely is permissible under the

LMRDA—the only public law restraint that conceivably could be applicable here.  *See supra* at

8; *see also Sheldon v. O'Callaghan*, 497 F.2d 1276, 1282 (2d Cir. 1972)("duly elected officers of

a union have a right and a responsibility to lead, and to give the members the benefit of their

advice on questions that arise. They have a right to use the union publications to express their

- 19 -

1   views" ).  The counterspeech expenditures at issue are therefore plainly authorized by, and not

2   prohibited by, Article II of the SEIU Constitution.

3           **2.**  Plaintiffs next allege that the SEIU Constitution, in an appendix captioned

4   "SEIU Member Bill of Rights and Responsibilities in the Union," provides every union member

5   with an enforceable right to obtain from the International a customized and targeted financial

6   report specifying the amount of money the SEIU has spent on any particular mailing, leafleting

7   campaign, phone-banking operation, or other SEIU activity of interest to the member.  Cplt. ¶¶

8   31, 32, 43(c).  Based on that premise, the Plaintiffs allege that when the International Union

9   turned down requests made by Plaintiffs Horn and Askew for reports of that kind, the

10  International violated its Constitution.  *Id.* ¶ 43(c).

11          This claim is doubly defective.  First, the SEIU Constitution expressly states that the

12  SEIU Member Bill of Rights and Responsibilities is enforceable only in internal union

13  proceedings governed by Article XVII of the SEIU Constitution.  Thus Article XVII, § 9

14  provides:  "The SEIU Member Bill of Rights and Responsibilities in the Union shall be enforced

15  exclusively through the procedures provided in this Article, and any decision rendered pursuant

16  to the procedures provided for herein, including any appeals, shall be final and binding on all

17  parties and not subject to judicial review."  Exh. 1 at 35.  That express limitation on the right

18  invoked by Plaintiffs Horn and Askew is sufficient to defeat their breach-of-constitution claim.

19          Second, the clause in the SEIU Member Bill of Rights and Responsibilities on which

20  Plaintiffs rely provides the "right to a full accounting of union dues," and in the letters to

21  Plaintiffs Horn and Askew denying their requests—letters referenced in the Complaint at ¶¶  31-

22  32 and attached hereto as Exhibit 5—the SEIU construed the phrase "right to a full accounting"

23  in precisely the way that that the Secretary of Labor has construed that phrase, *i.e.,* as a right to

24  receive a full and comprehensive annual financial report setting out the union's receipts and

25  disbursements by categories, and providing detailed information as to major expenditures.[7]  The

26  

27  _____

28  [7] That the Secretary of Labor shares that understanding is clear from the regulatory history of the
    Secretary's 2003 revision to regulations specifying the content of the annual financial report that
    unions are required to file with the Secretary each year pursuant to § 201(b) of the LMRDA, 29

1  "right to a full accounting," then, is *not* the right to any partial, or narrowly-targeted, accounting

2  a member might demand of the union as to a particular union activity.  Rather, it is the right to

3  receive periodic full financial reports disclosing the union's broader financial condition and

4  operations.

5       In all events, the SEIU's interpretation of the "full accounting" provision here is

6  manifestly reasonable, and the Ninth Circuit has held that, under the "well-established federal

7  policy of avoiding unnecessary interference in the internal affairs of unions," a union's

8  interpretation of its own constitution is "entitled to a high degree of deference." *See Carpenters*

9  *Local 42-L, supra*, 73 F.3d at 961.  Thus, even without the categorical bar that the SEIU

10  Constitution imposes against judicial enforcement of its Member Bill of Rights and

11  Responsibilities, the Plaintiffs could not succeed in their attempt to make out a violation of the

12  "right to a full accounting" clause.

13       **3.**  Plaintiffs' third and final breach-of-constitution claim rests on Article XXIII of

14  the SEIU Constitution.  Plaintiffs assert that Article XXIII requires the International Union to

15  exhaust internal union remedies as a condition of bringing suit, and that the International violated

16  that Article on April 29, 2008 when the SEIU, without first exhausting union remedies, instituted

17  the *SEIU v. Rosselli* suit (described *supra* at 4) against ten UHW officers, including three of the

18  Plaintiffs in this case.   Cplt. ¶¶  29, 43(b).

19       Plaintiffs' claim of a violation of Article XXIII is based on a willful misreading of that

20  provision's unambiguous text.  By its plain terms—quoted in full *supra* at 5—Article XXIII

21  imposes an exhaustion requirement only on members, local unions, and "affiliated bodies"—and

22  *not* on the International itself.

23       The claim of a violation of Article XXIII thus fares no better than Plaintiffs' other Count

24  II claims.  The Court should therefore dismiss Count II in its entirety for failure so state a claim.

---

26  U.S.C. § 431(b).  In the Preamble announcing that revision, the Secretary stated that the form
27  fulfilled the intent of the LMRDA Congress, as reflected in the Senate Report accompanying the
   bill, that the annual financial report would provide union members with a "*full accounting* of all
28  transactions involving their property." 68 Fed. Reg. 58380 (Oct. 3, 2003) (emphasis added).  *See*
   S. Rep.187, 86th Cong., 1st Session, p.9, 1959, U.S.C.C.A.N. 2318, 2325 (1959).

1

2

## B.     The Plaintiffs' Failure to Exhaust Their Internal Union Remedies
## Constitutes an Independent Ground for Dismissing Count II

3

4

The claims asserted in Count II have an additional fatal defect.  The Plaintiffs did not

5

exhaust their internal union remedies prior to bringing suit.  As the Ninth Circuit held in *Ackley,*

6

*supra*, "[w]hen union members allege a deprivation of rights guaranteed them by the union's

7

constitution or bylaws, they must exhaust whatever internal remedies the union affords prior to

8

bringing suit against the union." 958 F.2d at 1477.  This requirement serves a critical function,

9

the court of appeals explained, because "[w]hen a breach of the union constitution is alleged, an

10

exhaustion requirement allows the international to issue the authoritative interpretation of that

11

document, as is its prerogative…. The international's president or executive board can issue

12

rulings and thereby establish a body of decisional law." *Id.*

13

To be sure, exhaustion may be excused where resort to union remedies would be futile,

14

*see Clayton v. International Union, UAW*, 451 U.S. 179 (1981), but where the union

15

"establish[es] the availability of adequate internal union remedies, the burden then shifts to the

16

[opposing] party … to respond by affidavits or otherwise and set forth specific facts showing that

17

exhaustion of remedies would have been futile." *Lynn v. Sheet Metal Workers*, 804 F.2d 1472,

18

1483 (9th Cir. 1986), *cert. granted on other issues and aff'd sub nom. Sheet Metal Workers v.*

19

*Lynn*, 488 U.S. 347 (1989).

20

Here, "the availability of adequate internal union remedies" is easily established.  Article

21

VIII, § 1(h) of the SEIU Constitution  provides that "[t]he International President shall have

22

authority to interpret this Constitution and Bylaws and to decide on all points of law submitted to

23

him or her by Local Unions or the membership thereof, or affiliated bodies, subject to appeal to

24

the International Executive Board, and the next Convention."  Exh. 1 at 14.   That places the

25

burden on Plaintiffs to set forth specific facts, through admissible evidence, showing that

26

exhaustion of remedies before bringing the instant lawsuit would have been futile.[8]

27

28

---

[8] If the Court will have to consider evidence outside the pleadings to resolve the exhaustion
issue, that would not mean that this Motion should be treated as a summary judgment motion
rather than as a motion to dismiss.  To the contrary, the Ninth Circuit explained at length in *Ritza*

1   That burden will be high indeed, because although Plaintiffs have asserted that "the

2   structure for internal appeal is dominated by defendants and those opposed to the plaintiffs,"

3   Cplt. ¶ 35, the procedure for obtaining rulings on points of law does not end with the

4   International President but allows for appeals to the full SEIU Convention, which is a broad-

5   based, neutral body.  *See Local 796, IATSE v. Powell*, 124 L.R.R.M. (BNA) 2053, 1986 WL

6   15481 (N.D. Cal. 1986) ("[a]lthough arguably appeal to the International President and the Board

7   would be futile in light of their involvement in the challenged action, there is nothing in the

8   record to suggest Local 796 could not get a fair hearing before the Convention"); *Ritza v.*

9   *Longshoremen*, 837 F.2d 365, 370 (9th Cir. 1988) (fact that member would appear before

10  arguably hostile party at early step in grievance process did not excuse exhaustion where at the

11  final step a neutral arbitrator would decide grievance).  And while the Convention began on June

12  1, 2008 and ended on June 4, with the next Convention scheduled to take place in 2012, the

13  Plaintiffs filed their amended Complaint *before* the Convention—on May 23—and the matters

14  about which they complain were known to them well in advance of that date.  Needless to say, a

15  union member cannot inexcusably bypass a remedy and then plead for relief from the exhaustion

16  requirement on the ground that the remedy is no longer available.

17  **III.    THE ABUSE OF PROCESS CLAIM PLEADED IN COUNT III IS FRIVOLOUS**

18  Plaintiffs' third Count purports to state a claim under California law for "abuse of

19  process."  Cplt. ¶ 46.  The claim is based on the allegation that the Defendants by instituting the

20  *SEIU v. Rosselli* lawsuit referred to above, engaged in an "abuse of the legal process."   This

21  claim is frivolous, because the California Supreme Court squarely held in *Oren Royal Oaks*

22  *Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 232 Cal. Rptr. 576 (Cal. 1986), that the

23

24

25

26  *v. Longshoremen*, 837 F.2d 365, 368-369 (9th Cir. 1988), that "failure to exhaust nonjudicial
    remedies should be raised in a motion to dismiss," albeit as a "'[n]onenumerated' Rule 12(b)

27  motion," meaning that the motion may be heard "based on facts outside the record on affidavits
    submitted by the parties."  If Plaintiffs *fail* to produce admissible evidence in their opposition

28  papers, the Court should simply dismiss Count II under Rule 12(b)(6) for failure to state a claim
    as Plaintiffs do not plead any excuse for failing to exhaust their Count II claims.

1  mere initiation of a lawsuit, even for an improper purpose, does not support a claim for abuse of

2  process.

3       Indeed, because frivolous abuse-of-process claims have been held to interfere with the

4  California-law right to petition through the courts for a redress of grievances, a party improperly

5  sued for abuse of process may invoke California's "anti-SLAPP" statute, C.C.P § 425.16, to

6  strike the claim and receive an award of attorney fees from the offending parties.  *See Ramona*

7  *Unified Sch. Dist. v. Tsiknas*, 37 Cal. Rptr. 3d 381 (Cal. App. 2005) (abuse-of-process claim filed

8  in contravention of supreme court's decision in *Oren* properly stricken under anti-SLAPP

9  statute).  A special motion to strike Count III as violative of that statute is being filed separately.

10                          **CONCLUSION**

11       For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

12

13  Dated: July 1, 2008                          Respectfully submitted,

14

15                                      By ___/s/Leon Dayan___
                                        ROBERT M. WEINBERG
16                                      LEON DAYAN
                                        BREDHOFF & KAISER, PLLC
17
                                        GLENN ROTHNER(CSB No. 67353)
18                                      ROTHNER, SEGALL & GREENSTONE

19                                      Attorneys for Defendants

20

21

22

23

24

25

26

27

28